UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ABDUWALI ABDUKHADIR MUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:17-cv-00291-JPH-MJD |
| KIMBERLY RHOADS, | ) | |
| CHRISTOPHER McCOY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Federal Bureau of Prisons inmate Abduwali Abdukhadir Muse brought

this civil rights action under *Bivens v. Six Unknown Named Agents,* 403 U.S.

388 (1971), against employees of the Federal Correctional Institution in Terre

Haute, Indiana, for their alleged deliberate indifference to his serious medical

needs.  The Court previously granted summary judgment for Defendant

Shepherd.  The remaining two defendants—Kimberly Rhoads and Christopher

McCoy—now seek summary judgment.

### I. Factual and Procedural Background

**A. Facts[1]**

Mr. Muse has been incarcerated since April 2009.  Dkt. 124-1 at 9 (Muse

Dep. at 14).  Before he was incarcerated, he had not received regular dental

treatment, care, or instruction on how to care for his teeth.  *See* dkt. 124-20.

---

[1] Defendants argue that their statement of facts is uncontested because Mr. Muse has not "identif[ied] any specific disputes" with it "as required by Local Rule 56-1(b)."  Dkt. 138 at 3.  But that rule required only a "Statement of Material Facts in Dispute," which Mr. Muse has provided.  Dkt. 133 at 3–7.

A May 2009 dental exam revealed that he had poor oral hygiene, 24 decayed teeth, and two missing teeth.  Dkt. 124-2 at 70 (Shepherd Dep. at 85); dkt. 124-7.  In May of 2011—the same month he was transferred to the Federal Correctional Complex in Terre Haute—his oral hygiene remained poor, he had severe gum disease, and he was missing ten teeth.  Dkt. 124-2 at 70–71 (Shepherd Dep. at 86–87); dkt. 124-1 at 8 (Muse Dep. at 13).  Mr. Muse had more teeth extracted in 2011 and 2012.  Dkt. 124-10; dkt. 124-13.

In February 2013, Mr. Muse requested a dentist appointment, writing that he was missing thirteen teeth and could not eat without his gums bleeding.  Dkt. 124-14.  That June, Mr. Muse was brought to the dental clinic at the Warden's request, but was not seen because he "became unruly with staff" and "would not comply" with requests.  Dkt. 124-16.

Throughout 2013, Mr. Muse pursued administrative grievances about missing teeth and wanting dentures.  Dkt. 124-15.  Ultimately, Mr. Muse appealed to the BOP Central Office, writing that he had only a few teeth remaining, suffers while consuming food, and could not properly chew.  *Id.* at 6.  He asked for his teeth to be replaced.  *Id.*  The Administrator for National Inmate Appeals responded that Mr. Muse could have been seen in June 2013 for "the fabrication of dentures," but was not because of his "disruptive behavior and failure to follow instructions."  *Id.* at 7.  He also told Mr. Muse that he should inform the dental staff of his concerns with chewing food "and they can order a mechanical soft (blended) diet until you are provided with

dentures." *Id.* In September 2013, Mr. Muse again complained about tooth pain, and the prison dentist removed the tooth. Dkts. 124-17, 124-18.

In late 2013, Defendant McCoy became the prison's Assistant Health Service Administrator. Dkt. 132-4 at 4 (McCoy Dep. at 8). If an inmate "has a problem," Mr. McCoy does his "best to solve that issue within the confines of policy." *Id.* at 6 (McCoy Dep. at 17). McCoy also addresses inmates' administrative remedies and can talk to medical providers about concerns. *Id.* at 6–7 (McCoy Dep. at 17–20). Mr. Muse testified that he spoke with Mr. McCoy about his teeth pain and inability to eat "every Wednesday from approximately 2012[2] until [Mr. Muse] left Terre Haute." Dkt. 132-1 at 22 (Muse Dep. at 74–77). He also testified that Mr. McCoy took notes, but "never did anything" for Mr. Muse. *Id.* at 22 (Muse Dep. at 75). Mr. Muse specified one interaction when Mr. McCoy responded that Mr. Muse was "on the list [for dental care]" but that he had no control over who sees Mr. Muse. *Id.* at 9 (Muse Dep. at 25).

On December 4, 2013, Mr. Muse visited Defendant Rhoads—who started working for the BOP as a dental hygienist in April 2013—for a teeth cleaning. Dkt. 124-3 at 5 (Rhoads Dep. at 8); 124-20. At that appointment, Ms. Rhoads took x-rays, performed a "gross scaling with cavitron," and instructed Mr. Muse on oral hygiene. Dkt. 124-20. She found "very poor" oral hygiene, severe bone loss, and "buildup . . . with heavy bleeding." *Id.* The heavy bleeding blocked

---

[2] Mr. Muse testified that these conversations began "from approximately 2012" even though Mr. McCoy did not return to the Terre Haute prison until about September 2013. Dkt. 132-4 at 4 (McCoy Dep. at 8).

Ms. Rhoads' field of vision, so she instructed Mr. Muse to return in a few weeks after his gums healed from this "first stage of cleaning." *Id.* That return visit was scheduled for February 20, 2014, and then for March 5, 2014, but custody staff could not bring him to the dental clinic on either date. Dkt. 124-21; dkt. 124-22. Ms. Rhoads finished the cleaning on March 19, 2014. Dkt. 124-23. She found new "anterior calculus sub and supra calculus" and "heavy plaque showing no improvement with oral hygiene." *Id.* Ms. Rhoads also noted "severe bone loss and recession generalized" with "heavy generalized bleeding." *Id.* Mr. Muse also asked for dentures and a liquid diet because he was losing weight. Dkt. 132-3 at 20 (Rhoads Dep. at 24).

In October 2015, the prison dentist extracted another tooth and evaluated Mr. Muse for partial dentures. Dkt. 124-24. The dentist found "upper and lower anterior teeth remaining with varied remaining posterior non restorable teeth," and generalized bleeding and sub and supra calculus from "[v]ery evident" poor dental hygiene. *Id.* The dentist concluded that Mr. Muse did not qualify for dentures. *Id.* That same month, Mr. Muse submitted a request for dentures, complaining that he could not eat his food without his gums bleeding. Dkt. 124-25. The dentist responded that Mr. Muse was not eligible for dentures due to poor dental hygiene. *Id.* He also noted that Mr. Muse had "an adequate number of teeth to eat with" and denied a request for a soft diet. Finally, he told Mr. Muse that he would be re-evaluated when his name reached the top of the dental services waiting list. *Id.* Mr. Muse

appealed the dentist's decision to the Warden, the BOP Regional Office, and the BOP Central Office; each appeal was denied.  Dkt. 124-26.

 During his time at Terre Haute, Mr. Muse purchased commissary items including bagels, beef sausage, turkey logs, peanuts, peanut butter, candy bars, popcorn, almonds, mixed nuts, peanut M&Ms, and nutrition bars.  Dkt. 124-1 at 68–72 (Muse Dep. at 81–85).  Some things he may have given away, but he testified that "If I bought it, yes, I ate it."  *Id.* at 72–73 (Muse Dep. at 85–86).  Mr. Muse also testified that he had to soak "some of the things" in water to soften them. Dkt. 132-1 at 28 (Muse Dep. at 100).

When he arrived in BOP custody in 2009, Mr. Muse weighed 108 pounds.  Dkt. 124-35.  In May 2012, one year after his arrival at Terre Haute, he weighed 141 pounds.  Dkt. 124-36.  By May 2013, he weighed 155 pounds.  Dkt. 124-37.  He then dropped to 139 pounds by July 18, 2014, when he threatened to go on a hunger strike.  Dkt. 124-41.  The examining doctor noted that Mr. Muse's nutrition was within normal limits.  *Id.*  In December 2015, Mr. Muse weighed 140 pounds.  Dkt. 124-44.  The examining physician found that Mr. Muse had "[a]dequate food intake" but referred him to a dietician noting that he "would benefit with [a] mechanical soft diet." *Id.*  The doctor also provisionally diagnosed Mr. Muse with mild malnutrition "due to molar edentulism and incisor malocclusion."  *Id.*  In December 2017, Mr. Muse weighed 153 pounds and in May 2017 he weighed 151 pounds.  Dkt. 124-46.

Mr. Muse brought this action in June 2017, alleging that Defendants— Dr. Shepherd, the dentist at Terre Haute; Mr. McCoy, and Ms. Rhoads—were

deliberately indifferent to his serious dental needs.  Dkt. 1.  Dr. Shepherd was granted summary judgment on February 9, 2018.  Dkt. 39.  Mr. McCoy and Ms. Rhoads have moved for summary judgment, arguing that (1) they were not personally involved in Mr. Muse's dental care, (2) Mr. Muse's claims against them are barred by Indiana's two-year statute of limitations, (3) they were not deliberately indifferent to Mr. Muse's dental needs, and (4) they are entitled to qualified immunity.  Dkt. 125 at 1.  Additional facts will be added as they become relevant.

## II. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).  It cannot weigh evidence or make credibility

6

determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  The Court need only consider the cited materials and need not scour the record for other evidence. Fed. R. Civ. P. 56(c)(3); *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

### III. Analysis

#### A.    Plaintiff's Motion to Strike

In his response, Mr. Muse moves to strike Defendants' summary judgment motion because it is the third summary judgment motion in this case.  *See* dkt. 133 at 2-3.  The first motion was brought by only Dr. Shepherd based on immunity.  *See* dkt. 40 (granting dkt. 20).  And the second raised only exhaustion of administrative remedies, dkt. 63, which was addressed separately as this Court ordered, dkt. 55; dkt. 60.  So while the case management plan required "a party" to raise all summary judgment issues "in a single motion . . . [a]bsent leave of court," dkt. 41 at 5, Defendants were allowed to file a separate summary judgment motion on exhaustion, *see* dkt. 55; dkt. 60.

Mr. Muse's motion to strike is therefore **DENIED**.

#### B.    Deliberate Indifference

To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff "must show (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).  Tooth

decay and severe tooth pain are "ample evidence" of a serious medical

condition, *id.*, and Defendants do not contest that prong of the deliberate-

indifference claim, *see* dkt. 126 at 1.

### 1. Defendant McCoy

Mr. McCoy argues that he was not deliberately indifferent to Mr. Muse's

dental needs while Mr. Muse was at Terre Haute, and regardless is protected by

qualified immunity.  Dkt. 125 at 20–21, 25–32.  Mr. Muse argues that Mr.

McCoy's failure to address his grievances was deliberate indifference, but he

does not respond to Mr. McCoy's qualified immunity argument.  Dkt. 133 at 9–

11.

Qualified immunity protects government officials from liability for civil

damages unless their conduct violates "clearly established statutory or

constitutional rights of which a reasonable person would have known."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "Once qualified immunity is

raised, the plaintiff has the burden of establishing that his or her rights were

violated and that the law concerning the proffered right 'was clearly established

at the time the challenged conduct occurred.'"  *Burritt v. Ditlefsen*, 807 F.3d

239, 249 (7th Cir. 2015).

Mr. Muse brings this case under *Bivens*, so liability can only be "personal

rather than vicarious."  *Estate of Miller by Chassie v. Marberry*, 847 F.3d 425,

428 (7th Cir. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  Under

that standard, medical professionals may be liable for showing deliberate

indifference to serious medical needs that they are tasked with treating.  *See*

8

*Arnett v. Webster*, 658 F.3d 742, 753–54 (7th Cir. 2011).  But non-medical administrators "can rely on the expertise of medical personnel," so they are "generally . . . justified in believing that the prisoner is in capable hands."  *Id.* at 755.  Here, Mr. McCoy acted only as a non-medical administrator.  He had no dental training and was not involved in treating inmates.  Dkt. 132-4 at 37 (McCoy Dep. at 49).  He also testified that if he received a claim of improper dental care, he would research it to see if the inmate had submitted the proper form or had seen the dentist.  *Id.* at 15 (McCoy Dep. at 20).  And while Mr. Muse testified that Mr. McCoy "never did anything about" his concerns, he also testified that Mr. McCoy once told him that he was "on the list" for dental treatment.  Dkt. 132-1 at 9 (Muse Dep. at 25).

The Seventh Circuit repeated many times before 2013 that non-medical prison employees like Mr. McCoy can rarely be liable for inmates' deficient medical care.  First, in *Burks v. Raemisch*, the court explained that prison administration involves "divide[d] tasks," so "no prisoner is entitled to insist that one employee do another's job."  555 F.3d 592, 595 (7th Cir. 2009).  The plaintiff therefore could not blame "the medical unit's inaction" on a grievance handler.  *Id.*  Second, in *Hayes v. Snyder*, the Seventh Circuit held that non-medical staff were not deliberately indifferent when they checked with medical providers after the plaintiff complained that doctors "refus[ed] to respond to his pleas for treatment."  546 F.3d 516, 527 (7th Cir. 2008).  And third, in *Arnett*, the Seventh Circuit held that a non-medical defendant was not deliberately indifferent for merely referring an inmate to medical providers.  658 F.3d at

9

756 ("Arnett doesn't allege that Parker condoned or approved the medical staff's alleged refusal to provide him medical care, impeded their ability to provide effective treatment, or was in a position to take corrective action.").

The Seventh Circuit recently summarized these cases with the rule that "inaction following receipt of a complaint about someone else's conduct is not a source of liability." *Marberry*, 847 F.3d at 428–29. Therefore, "prison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Id.* at 428. Moreover, "a host of . . . cases make clear" that "the law encourages . . . administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (collecting cases).

Against that background, Mr. Muse "has the burden of establishing" that his rights were violated under "clearly established" law in order to overcome qualified immunity. *Burritt*, 807 F.3d at 249. But he does not address qualified immunity in his brief. *See* dkt. 133. And while he argues that Mr. McCoy was deliberately indifferent, he does not cite any case finding a triable issue of fact or upholding damages related to non-medical prison employees who handle grievances about medical conditions. *See id.* at 9–11.[3]

---

[3] The Court has found only one case that comes close. In *Perez v. Fenoglio*, the Seventh Circuit held that a claim against grievance handlers should proceed past the screening stage because the plaintiff alleged that they turned a blind eye to allegedly unconstitutional conduct. 792 F.3d 768, 781–82 (7th Cir. 2015) ("Again, we emphasize that the district court screened Perez's complaint before discovery, before submission of any evidence, and before the defendants were even served process."). However, *Perez* was decided after the events giving rise to this case and did not

10

To be sure, the Seventh Circuit has said that non-medical administrators may defer to medical professionals' judgment "so long as [they] did not ignore [the prisoner]." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *see Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). That court has therefore suggested that ignoring grievances "might" or "perhaps" be enough to support a claim. *Burks*, 555 F.3d at 595 (citing *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir. 2005); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008); *Arnett*, 658 F.3d at 755 ("Non-medical defendants cannot simply ignore an inmate's plight."). However, those generalized statements—with no supporting holdings based on similar facts—are not clearly established law as required to overcome qualified immunity. *See Kemp v. Liebel*, 877 F.3d 346, 351–52 (7th Cir. 2017) ("[T]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015))).

Mr. Muse also has not designated evidence that Mr. McCoy had "a reason to believe (or actual knowledge)" that Mr. Muse was being mistreated or denied necessary treatment. *King*, 680 F.3d at 1018. While Mr. Muse complained about "pain and inability to eat" due to his teeth, dkt. 132-1 at 22 (Muse Dep. at 76), he has not designated evidence of a serious medical need requiring prompt medical attention that would have been obvious to Mr. McCoy. *See Orlowski v. Milwaukee County*, 872 F.3d 417, 422 (7th Cir. 2017); *Greeno*, 414 F.3d at 655–56. Rather, Mr. Muse's weight was in a normal range throughout

---

address qualified immunity. *See id.*; *Burritt*, 807 F.3d at 249 (right must be "clearly established at the time the challenged conduct occurred" to overcome qualified immunity).

his time in Terre Haute and he has designated no evidence that he suffered

from moderate or severe malnutrition.  *See* dkt. 124-36; dkt. 124-37; dkt. 124-

41.  Moreover, Mr. McCoy testified that when he received a claim of improper

dental care, he would research it to see if the inmate had submitted the proper

form or had seen the dentist.  *Id.* at 15 (McCoy Dep. at 20).  Given that practice

and the deference that non-medical administrators are entitled to give to

medical professionals, Mr. Muse has not designated evidence or cited

controlling law that can overcome qualified immunity.  *See Johnson v. Doughty*,

433 F.3d 1001, 1012 (7th Cir. 2006) (nonmedical defendants are not

deliberately indifferent "simply [for] fail[ing] to respond directly to the medical

complaints of a prisoner who was already being treated"); *Burritt*, 807 F.3d at

249.

Mr. McCoy is therefore entitled to summary judgment based on qualified

immunity.

### 2. Defendant Rhoads

Ms. Rhoads argues that she is entitled to summary judgment because

she was not personally involved in any decisions that deprived Mr. Muse of

dental care.  Dkt. 126 at 22–25.  Mr. Muse responds that Ms. Rhoades failed to

schedule him for cleanings and removed him from the denture waitlist,

showing deliberate indifference to his dental needs.  Dkt. 133 at 12–15.

### a. Failure to Schedule Cleanings

Mr. Muse first argues that Ms. Rhoads was deliberately indifferent

because, on December 4, 2013, she stopped Mr. Muse's teeth cleaning and did

not treat him again for more than three months. Dkt. 133 at 12. The designated medical records, however, show that Ms. Rhoads had to stop the cleaning because heavy bleeding blocked her field of vision. Dkt. 124-20. Mr. Muse was scheduled to return—first on February 20 and then on March 5, 2014—but prison records show that custody staff could not bring him to the dental clinic on either date. Dkt. 124-21; dkt. 124-22. Ms. Rhoads then finished the cleaning on March 19, 2014. Dkt. 124-23.

Mr. Muse does not designate any evidence showing that it was unreasonable to stop the first cleaning while his gums healed, so that Ms. Rhoads could see to complete the cleaning. *See* dkt. 133 at 12. He also does not designate any evidence showing that Ms. Rhoads was responsible for delaying his return visit. *Id.* There is therefore no evidence showing that Ms. Rhoads was deliberately indifferent related to the cleaning that she started in December 2013 and finished in March 2014. *See Marberry*, 847 F.3d at 428–29 (*Bivens* liability requires personal responsibility for a violation).

Mr. Muse next argues that Ms. Rhoads was deliberately indifferent because she cleaned Mr. Muse's teeth "twice in a span of **four** years." Dkt. 133 at 12. But the designated evidence does not show that Ms. Rhoads was responsible for the lack of additional cleanings. *See id.* Instead, cleanings were scheduled based on the National Waiting List and Dr. Shepherd—not Ms. Rhoads—made the decision to drop Mr. Muse from the list. Dkt. 124-2 at 61, 87 (Shepherd Dep. at 76, 102); dkt. 124-3 at 32 (Rhoads Dep. at 42). Mr. Muse's testimony that he "believed" that Ms. Rhoads "had control of the list"

13

does not support the inference that she actually removed him from the list.
*See Palmer v. Marion County*, 27 F.3d 588. 595 (7th Cir. 2003) (evidence cannot
be speculative and must be based on personal knowledge).  Moreover, Mr.
Muse did not testify that he has personal knowledge about who controlled the
list or who removed him from it.  Dkt. 132 at 21 (Muse Dep. at 71) (Mr. Muse
admitting that "I don't have access" to information about scheduling
responsibilities and that he didn't know "if Ms. Rhoads actually ha[d] control
over" the list); *see Palmer*, 27 F.3d at 595.

Because the undisputed evidence is that Ms. Rhoads did not remove Mr.
Muse from the list, it does not matter if hygienists scheduled appointments in
order of names on the list.  *See* dkt. 132-2 at 6 (Shepherd Dep. at 15).  The
designated evidence does not allow a reasonable jury to find that Ms. Rhoads
was personally responsible for Mr. Muse not having his teeth cleaned again
after March 2014.  Dkt. 132-1 at 10, 18 (Muse Dep. at 26, 59); *see Marberry*,
847 F.3d at 428–29 (*Bivens* liability requires personal responsibility for a
violation).

### b.  Failure to Help Get Dentures

Mr. Muse argues that Ms. Rhoads was deliberately indifferent for failing
to help him get dentures and to adjust to his difficulty eating.  Dkt. 133 at 13.
Mr. Muse complained to Ms. Rhoads about his inability to eat[4] and told her

---

[4] While Mr. Muse argues that his lack of dental care affected his need for a soft or
liquid, he does not argue that Ms. Rhoads was deliberately indifferent to a need for a
special diet.  Dkt. 133 at 13–15.  Moreover, orders for special diets are handled by
doctors—not by Ms. Rhoads—and Mr. Muse filed separate grievances about his diet

that he wanted dentures.  Dkt. 132-3 at 8 (Rhoads Dep. at 24).  However, Mr.
Muse did not receive dentures because his hygiene was not good enough to
allow them, dkt. 132-1 at 22 (Muse Dep. at 74), and/or because Mr. Muse had
been removed from the dental care waiting list, which governs dentures as well
as cleanings, dkt. 124-2 at 18, 68–69 (Shepherd Dep. at 28, 83–84).  Ms.
Rhoads is not responsible for Mr. Muse's oral hygiene practices.  Dkt. 124-20;
dkt. 124-23 (medical records describing Mr. Muse's poor hygiene).  And, as
explained above, she was not responsible for Mr. Muse's removal from the list
that determined when his teeth would be cleaned.  The designated evidence
therefore does not allow a reasonable jury to find that Ms. Rhoads was
personally responsible for Mr. Muse not receiving dentures. *See Marberry*, 847
F.3d at 428–29 (*Bivens* liability requires personal responsibility for a
violation).[5]

Ms. Rhoads is therefore also entitled to summary judgment.[6]

### C.   First Amendment Retaliation

Defendants ask the Court to clarify that any remaining retaliation claim
is dismissed.  Dkt. 125 at 33.  The Court previously ordered Mr. Muse to show

---

needs.  *See* dkt. 124-3 at 41 (Rhoads Dep. at 51); dkt. 124-2 at 15–16 (Shepherd Dep. at 53–56).

[5] Because there is no triable issue of fact on deliberate indifference, the Court does not address Ms. Rhoads's argument that she is entitled to qualified immunity.

[6] Because both Mr. McCoy and Ms. Rhoads are entitled to summary judgment because the designated evidence does not support deliberate indifference or because they are entitled to qualified immunity, the Court does not address Defendants' statute of limitations argument.  *See* dkt. 125 at 19–20.

cause why his First Amendment retaliation claim show not be dismissed under *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).  Dkt. 103.  Mr. Muse did not respond and has not addressed this claim in his response brief.  *See* dkt. 133.  The retaliation claim is therefore **DISMISSED** for the reasons in the Court's previous show cause order.  Dkt. 103.

## IV. Conclusion

Defendants' motion for summary judgment is **GRANTED**.  Dkt. [124].

Final judgment will issue by separate entry.

**SO ORDERED**.

Date: 3/31/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Abduwali Abdukhadir Muse
70636-054
Edgefield Federal Correctional Institution
P.O. Box 725
Edgefield, SC 29824

Jackson Taylor Kirklin
United States Attorney's Office (Indianapolis)
taylor.kirklin@usdoj.gov

Gina M. Shields
United States Attorney's Office (Indianapolis)
Gina.Shields@usdoj.gov

Craig W. Wiley
Jackson Lewis PC (Indianapolis)
craig.wiley@jacksonlewis.com